**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RAYMOND L. WESTON | : CIVIL ACTION |
| : | |
| v. | : |
| : | |
| CITY OF PHILADELPHIA, COMMISSIONER CHARLES H. RAMSEY, SERGEANT DIDONATO, SERGEANT GUILIAN, LIEUTENANT JOHN DOE, CAPTAIN JOHN DOE, CAPTAIN DETECTIVE JOHN DOE, POLICE OFFICER HULMES, POLICE OFFICER BANNING, POLICE OFFICER QUINN, POLICE OFFICER LYNCH, POLICE OFFICER JONES, and POLICE OFFICERS JOHN DOE 1–2 | : : : : : : : : : : NO. 17-2432 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                     **August 29, 2017**

In his complaint, Raymond Weston asserts claims under 42 U.S.C. § 1983 for unlawful search and seizure (First Count), excessive bail (Second Count), and malicious prosecution (Third Count) against seven defendant police officers (defendant officers), and failure-to-train (Fourth Count) and failure-to-discipline (Fifth Count) against the City of Philadelphia and then-Police Commissioner Charles H. Ramsey. He also asserts state-law claims for false arrest and false imprisonment (Sixth Count), malicious prosecution (Seventh Count), and intentional infliction of emotional distress (Eighth Count) against the defendant officers. The defendants, except Hulmes,[1] have moved to dismiss the complaint.

We shall grant the motion to dismiss in part and deny it in part. Weston's § 1983 claims for unlawful search and seizure, excessive bail, and false arrest and

---
[1] The docket does not reflect that Officer Hulmes was served.

imprisonment claims are barred by the statute of limitations. His claims based on malicious prosecution are not time-barred. Although he has not stated a *Monell* claim against the City, he has sufficiently alleged individual liability of each of defendant officers.

## Background[2]

Weston's ordeal began on December 20, 2013, when police officers from the Narcotics Strike Force stopped him on the street.[3] They searched him, taking two cell phones and a set of keys.[4] They then placed him under arrest.[5] While Weston was detained, Jones gave the keys to Hulmes.[6] Without a search warrant, Hulmes and other officers entered Weston's residence.[7] Inside, they detained his girlfriend, searched the premises, and removed cash.[8]

Although he had not committed a crime, Weston was charged with intentionally possessing a controlled substance, intent to deliver a controlled substance, conspiracy, possession of a prohibited firearm, and possession of an instrument of crime with intent to employ it criminally.[9] Unable to post bail, Weston remained in jail for eighteen

---

[2] As we must in considering a Rule 12(b)(6) motion, we accept the facts recited in Weston's complaint and view them in the light most favorable to him.

[3] Compl. ¶¶ 25–26.

[4] *Id.* ¶ 27.

[5] *Id.*

[6] *Id.* ¶ 28.

[7] *Id.*

[8] *Id.* ¶ 29.

[9] *Id.* ¶ 32. Weston does not allege when he was charged and when his bail was set. We infer they occurred on December 20, 2013, the date he was stopped, searched, and arrested.

2

months.[10] In June 2015, all charges against him were dismissed and he was released.[11] According to the complaint, he was released "when it became known that Defendant Officer Hulmes and other members of the Narcotic Strike Force may have planted evidence, falsified documents/affidavits, lied in court, and assaulted and robbed suspects."[12]

By the time he was released, Weston had lost his job, home, and belongings.[13] He claims the officers "caused severe physical and psychological harm."[14] After his release, he started seeing a psychotherapist.[15] He filed this action on May 30, 2017, three and a half years after his arrest.

**Standard of Review**

Pursuant to Rule 12(b)(6), a court may dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (quoting

---

[10] *Id.* ¶ 34. Weston alleges that his bail was set at either $50,000 or $500,000. *Id.* ¶¶ 33, 34.

[11] *Id.* ¶ 35.

[12] *Id.*

[13] *Id.* ¶ 39.

[14] *Id.* ¶ 37.

[15] *Id.* ¶ 41.

3

*Twombly*, 550 U.S. at 557).

A conclusory recitation of the elements of a cause of action is not sufficient. The plaintiff must allege facts necessary to make out each element. In other words, the complaint must contain facts which, if proven later, support a conclusion that the cause of action can be established.

In assessing the sufficiency of a complaint, a court engages in a three-part sequential analysis. It must: (1) identify the elements of the causes of action; (2) disregard conclusory statements, leaving only factual allegations; and (3) assuming the truth of those factual allegations, determine whether they plausibly give rise to an entitlement to relief. *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

### Statute of Limitations

The statute of limitations in a § 1983 action is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). The Pennsylvania statute of limitations for a personal injury action is two years. *Id.* (citing 42 Pa. Cons. Stat. § 5524(2)). Thus, the statute of limitations for § 1983 claims arising in Pennsylvania is two years.

Weston argues that the statute of limitations did not begin to run until June 2015, when the charges against him were dismissed and he learned that the defendant officers "may have planted evidence, falsified documents/affidavits, lied in court, and assaulted and robbed suspects."[16] Contrary to his argument, Weston's claims based on false arrest and false imprisonment, unlawful search and seizure, and excessive bail

---

[16] *Id.* ¶ 35.

accrued on December 20, 2013, the date he was stopped, searched, arrested, charged, and bail was set. His malicious prosecution claim, however, did not accrue until June 2015, when the charges were dismissed.

Citing *Wallace v. Kato*, 549 U.S. 384 (2007), Weston argues that the statute of limitations does not bar his false arrest and false imprisonment claims because the "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." *Id.* at 389 (internal quotation marks omitted) (quoting 2 H. Wood, Limitation of Actions § 187d(4), at 878 (rev. 4th ed. 1916)). He mistakenly asserts that his false arrest and false imprisonment ended in June 2015, when the charges were dismissed and he was released from prison.

An arrest lacking probable cause, as is the case here, can support a cause of action not only for false arrest, but also for false imprisonment. A § 1983 Fourth Amendment claim for false imprisonment is "based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan,* 47 F.3d 628, 636 (3d Cir. 1995). Where a person is imprisoned after having been arrested without probable cause, the imprisonment is deemed false because it was based upon an illegal arrest. Once the person is held on the charges by a judicial authority, the detention is no longer dependent on the false arrest, but rather on a judicial determination. In other words, at the time the plaintiff is held by a judicial authority, his claim transforms from false imprisonment to malicious prosecution—the false imprisonment ends and the malicious prosecution begins at that point.

Because "[t]he sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process* . . . . a false imprisonment ends once

the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace,* 549 U.S. at 389; *see also Hunt v. City of Scranton,* 236 F. App'x 740, 743 (3d Cir. 2007). Accordingly, "'[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.'" *Id.* at 387 (quoting 2 H. Wood, *supra*, § 187d(4), at 878). Thus, the statute of limitations for claims based on false arrest and false imprisonment begins to run when the plaintiff is detained pursuant to legal process. *Wallace,* 549 U.S. at 397.

Weston was charged on December 20, 2013, the same day he was falsely arrested. He did not file this action until May 30, 2017. Thus, his false arrest and false imprisonment claims, having accrued more than two years before he filed this action, are barred by the statute of limitations.

Although Weston's false arrest and false imprisonment claims are barred by the statute of limitations, his malicious prosecution claims are not. "[P]retrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case." *Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (2017). Although the tort of false imprisonment ends when legal process begins, "unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Wallace*, 549 U.S. at 390.

In other words, Weston states a claim for the continuing violation of his Fourth Amendment rights after legal process began—detention pursuant to legal process based on falsified statements and unlawful search and seizure. That claim is for

6

malicious prosecution. *See Manuel*, 137 S. Ct. at 921 & n.4 (citing *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009)) (including the Third Circuit among the majority of circuits that have recognized a Fourth Amendment malicious prosecution claim for Manuel's claim for unlawful detention).

Unlike a claim for false imprisonment, a claim for malicious prosecution accrues upon the favorable termination of criminal proceedings. *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (quoting *Heck v. Humphrey*, 512 U.S. 477, 489 (1994)). Weston's malicious prosecution claims did not accrue until the charges were dismissed and he was released in June 2015. He filed his complaint in May 2017. Therefore, the two-year statute of limitations does not bar his malicious prosecution claims and his failure-to-train, failure-to-supervise, and intentional infliction of emotional distress claims to the extent they are based on malicious prosecution.

**Malicious Prosecution**

To establish a Fourth Amendment claim of malicious prosecution under § 1983, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing him to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). To establish a claim of common-law malicious prosecution resulting in a criminal proceeding under Pennsylvania law, a plaintiff need not show the fifth element, a seizure consistent with the Fourth Amendment. *Id.* at 186 n.2 (citing *Merkle v. Upper*

7

*Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000)).

There is no question that Weston has alleged each of the essential elements of a malicious prosecution cause of action. Whether he has sufficiently alleged what each defendant did or did not do to be held responsible is the question.

"To prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights." *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005). A plaintiff must establish that each defendant was personally involved in the alleged wrong. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). He does so "by describing the defendant's participating in or actual knowledge of and acquiescence in the wrongful conduct." *Id.* (citing *Rode*, 845 F.2d at 1207).

Weston alleges Hulmes and Jones actually participated in illegal conduct. He alleges that Jones arrested him and seized his keys in the search and gave them to Hulmes, who used them to enter his home with other officers without a search warrant. He further alleges that Hulmes and the other officers "fabricated affidavits" and "planted evidence, falsified documents/affidavits, lied in court, and assaulted and robbed suspects."[17] He does not provide any specific allegations about the other individual defendants.

Although his complaint is not precise in identifying what each defendant allegedly did, Weston states, albeit barely, enough to implicate all defendant officers in the illegal arrest, search, detention, and prosecution. He alleges, after naming the individual

---

[17] *Id.* ¶¶ 32, 33, 35.

police officers, that the "Defendant Officers stopped, detained, and searched Plaintiff. . . . Officer Hulmes and other officers entered [his home] without a search warrant."[18] He also claims the "Defendant Officers," by fabricating and falsifying affidavits, have been "unlawfully arresting and prosecuting individuals."[19] Throughout the complaint, Weston attributes the illegal conduct resulting in the violation of his constitutional rights to Hulmes, Jones, and the "other Defendant Officers."

Drawing all reasonable inferences in Weston's favor, as we must, we conclude he has sufficiently alleged the personal involvement or acquiescence of each of the defendant officers. He has alleged that each one participated in, knew of, and/or acquiesced in the constitutional violations. That is enough to overcome a motion to dismiss.

**Municipal Liability**

Because Weston's malicious prosecution claim survives dismissal, we must consider whether he has sufficiently stated claims for failure-to-train and failure-to-supervise related to the alleged malicious prosecution. A municipality may be held liable under § 1983 for injuries inflicted by its agents or employees only if the injuries were the result of a governmental policy or custom. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Santiago*, 629 F.3d at 135. A governmental policy or custom can be established by showing either that the decisionmaker possessing final authority to establish a municipal policy did so by issuing an official statement of policy or that a

---

[18] *Id.* ¶¶ 26, 28.

[19] *Id.* ¶ 30.

9

governmental custom developed when the official acquiesced to a course of conduct such that it operated as law. *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007).

A § 1983 claim against a municipality may not be predicated on respondeat superior. *Monell*, 436 U.S. at 694. Although a municipality may be liable for failure to train its employees, such a failure results in liability only if it amounts to "deliberate indifference" to the rights of those with whom the employees come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014).

For municipal liability to attach, a plaintiff must demonstrate a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. The necessary causal link is shown where the municipality promulgates a policy statement and the injurious act occurs as a result of an implementation of that policy; the policymaker himself violates a federal law; or the policymaker is deliberately indifferent to the need for action to correct an inadequate practice that is likely to result in a constitutional violation and fails to act. *Jiminez*, 503 F.3d at 249–50.

Viewing the complaint in the light most favorable to Weston, we conclude that he has not stated a cause of action for municipal liability. He has named the decisionmaker, former Commissioner Ramsey.[20] But, he has not alleged any facts that show what Ramsey did or did not do. Instead, he makes the conclusory statement that the City and Commissioner Ramsey "exhibited a deliberate indifference to the

---

[20] *Id.* ¶¶ 63, 69.

supervision and training of Defendant Officers."[21]

The fatal flaw is his allegation that the practice did not become known until June 2015. He alleges that "[a]fter being incarcerated for 18 months, Plaintiff was released in June 2015, when all charges against him were dismissed when it became known that Defendant Officer Hulmes and other members of the Narcotic Strike Force may have planted evidence, falsified documents/affidavits, lied in court, and assaulted and robbed suspects," presumably including suspects other than Weston himself.[22] By Weston's own allegation, Ramsey could not have known of "the practice" or custom of fabricating evidence and falsifying affidavits until after the charges against Weston had been dismissed.

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional [government] policy, which policy can be attributed to . . . policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Weston's allegations, if proven, fall far short of this threshold. He makes only conclusory statements which, viewed in the light most favorable to him, fail to show any link between a failure-to-train or a failure-to-supervise and the constitutional injury he suffered.

Weston has alleged that the City and Ramsey inadequately trained and supervised the "narcotics unit on proper searches, seizures, documentation preparation and prosecutions."[23] He claims there was a "pattern, practice, and custom of not

---

[21] *Id.* ¶ 65.

[22] *Id.* ¶ 35.

[23] *Id.* ¶ 64.

11

properly disciplining Defendant Officers in the Philadelphia Police Department, specifically officers in the Narcotics Strike Force, who violated individuals' rights by engaging in improper search and seizures, arrests, and prosecutions of individuals."[24] Weston alleges that the failure to properly train and supervise the officers resulted in his injuries.[25]

Weston has not alleged how the City failed to train or supervise the Narcotics Strike Force. He only sets out the consequences of the alleged failure-to-train and failure-to-supervise. *See Thomas*, 749 F.3d at 226 ("Liability cannot rest only on a showing that the employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury. [T]he causation inquiry focuses on whether the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." (quotations omitted)). Nor has he alleged any affirmative decisions taken by the City or a decisionmaker. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) (internal quotation marks omitted) (quoting *City of Canton*, 489 U.S. at 388) ("A municipality's failure to train its police officers can subject it to liability, however, only where [it] reflects a deliberate or conscious choice by [the] municipality—a policy as defined in Supreme Court cases.").

Weston's statements are short on details. Even the most expansive and liberal reading of the complaint does not permit one to find that he was harmed by a continuing custom of failing to train and supervise officers whose conduct resulted in improper

---

[24] *Id.* ¶ 70.

[25] *Id.* ¶¶ 66, 71.

prosecutions. He does not allege facts, which if proven, could show how the City and Ramsey failed to train and supervise. Weston's complaint does not allege facts identifying the policy or custom that is necessary upon which to premise *Monell* liability, or how it caused the constitutional violation. Nor does it allege that the policymaker had prior notice through a pattern of similar constitutional violations. The complaint contains no facts that could support the conclusion that Ramsey was deliberately indifferent or made a conscious choice not to train or to discipline police officers. Therefore, we shall dismiss the *Monell* claim.

**Conclusion**

Weston's federal § 1983 and state-law claims for unlawful search and seizure, excessive bail, and false arrest and false imprisonment are barred by the statute of limitations. His claims based on malicious prosecution are not time-barred. He has sufficiently alleged individual liability of each of the individual defendants, except Ramsey, but he has not sufficiently alleged the necessary elements to support a *Monell* claim.